GOLDEN EAGLE INS. CO. I don't intend to take up a great deal of the Court's time today because I really believe that Golden Eagle's briefs have more than adequately addressed the issues, and particularly... CHIEF JUSTICE ROBERTS            CHIEF JUSTICE ROBERTS I'm sorry. CHIEF JUSTICE ROBERTS I'm sorry. I've got a question there. I'm not sure we need to deal with the other insurance clauses. That's always an interesting exercise, and I don't know if we need to reach it without a tender after truck insurance exchange. My problem with this case is it looks like it was all over. It was settled. Goodbye case. Each insurance company chipped in some money for the settlement, and they were done, and it was closed. And then the settlement comes apart, and one of the insurance companies doesn't tell the other one. They hire a new lawyer, and it looks like I used to do insurance defense. To me, it looked like it was churned. The lawyer wrote over 100 letters. I would have written maybe a half dozen at the outside, and I couldn't figure out why they were doing all this work, and that made me think it really did matter whether it was tendered because one insurance company might have said, no, no, not that lawyer, which they have a right to do under the policy. So I'm just wondering why the lack of a tender, the lack of any notice when the defense began after the settlement fell apart, doesn't kill the liability for defense costs under truck insurance exchange. Well, first of all, there was a notice, a second notice. Right on the eve of trial. On the eve of trial, yes, Your Honor. Yeah, but most of the – but they've committed themselves to the defense lawyer, the one that sends all these letters, and most of the work is done before you ever get to trial. That's true, Your Honor, but under Federal's policy, Federal does not get to choose the lawyer, unlike the CGL policy. I think they get to turn down the lawyer. They get to give consent that shall not be unreasonably withheld. That's right. They don't get to pick the lawyer, but they get to turn down the lawyer as long as they have some reason. Right. And they might – if they'd known at the outset, what reason would they have had to turn it down? They could not unreasonably withhold consent for the new lawyer, and there would have been no reason for them to at the outset. And I think you've gotten – I hadn't intended to talk about the other insurance clause. A couple hundred thousand dollars in defense expenses, particularly if they had prior experience with that lawyer. That'd be a reason. Well, I think, Your Honor, the subject matter may have been part of it. This was an advertising injury claim. There was apparently some very bad blood as between the process of making a film. That often becomes high drama. I think some of us know that. And it was over a charitable organization that wanted to have this film to make money. And I think perhaps that emotions ran high over who was to get what out of that, when really it was all for charity. In the pre-settlement period, what was Federal's role? What did they do? I'm sorry. In the pre-settlement, the one that resolved, Federal did participate at that point. They did not. But they were notified. They were notified. And they chipped in, right? Absolutely not. I thought they paid half the settlement. They paid half the settlement after the case went to trial. And the first settlement And they didn't object. No, they didn't object. They paid it because they knew they had an obligation to. They had at the outset agreed their policy was triggered for coverage for these claims. So they agreed and they paid. And that's all they had an obligation to do, right? I don't believe so. I believe under the DNO policy, they had an obligation to reimburse for defense fees and costs that had been incurred in the defense of the mutual insured. I thought this case was just about the claim for defense fees incurred after the settlement fell apart, not for any defense fees leading up to the first settlement. No, Your Honor. It is for all defense fees incurred in the defense of Barbara Tellefson, the mutual insured. Federal never paid a dime in reimbursement or on an incurred basis for the defense of its insured. In fact, a week or so after it first learned in June of 1998 that some other carrier, that being Golden Eagle, was going to step up to the plate, it automatically turned back and relied on its other insurance clause. Well, we don't have to pay anything because we're excess, despite the fact that we've already admitted we're primary. So the first settlement, that didn't wrap up any obligation for defense costs leading up to the first settlement? It did not. The first settlement only had to do with some payment of money by Golden Eagle and some agreements on copyright, who was going to hold the copyright, who was going to get a little bit of money for some of the work done. So what was the status of Federal's reimbursement obligations post-settlement, pre-reinstitution in that interval? I mean, the brief suggests everybody sort of closed up their books on it. So what was the status of seeking reimbursement against Federal for the pre-settlement defense costs? You mean between the January 98 settlement and then when the case was revived? Yes. I don't believe that there was any effort on Golden Eagle's part to seek that. But the settlement unraveled so quickly that they just didn't ask for it yet. And Federal had taken a hard-line position that it wasn't paying anything because it was excess. All right. It seems to me one of the issues, which you haven't really addressed, to me, seems to me the primary issue is the adequacy of notice, right, leading up to the trial. The second notice, Your Honor. Yes. Yes. Well, notice after the settlement fell apart. Well, yes, Your Honor. That notice came on December 1st, 2000. And that notice took the form of Golden Eagle calling Federal and saying on December 1st, there's going to be a trial at the end of January, 2001. And Golden Eagle had to have made that notice for only one purpose, to let Federal know that the defense fees were going to be incurred, had been incurring and were going to continue to incur, and that Golden Eagle was going to look toward Federal for the purpose of contribution. That was the only reason to have called then. And Federal did the same thing it did the first time around, absolutely nothing. There was no evidence in the record below that Federal asked, well, what happened  Who's defending it? What are the issues? Have they changed? It did exactly the same it had in the beginning. It sat back and said, we don't have to pay anything because we're excess. And so it went along, knowing that a trial was going to be at the end of January. That trial never took place then until the end of March. This notice provision says, The insured shall, as a conditioned precedent to exercising their rights under this claim made against them for a wrongful act. That's between the insured and the company, I'd say. That's between the insured and the company. And that notice had been given. And when Golden Eagle called up, it was the same notice. It was a revival. It was the same wrongful act being alleged. It's one that had seemingly been resolved, but then revived itself. Truck is the one that seems to require the notice. I mean, not seems, does. Absolutely. So what other purposes, it's undisputed, the district court found, in fact, that there was notice before trial that said it didn't make an overt claim for contribution. So what other purpose could there have been for the notification, and why wasn't there under Truck at least some articulated statement of, we're going to look to you for contribution? Well, that's because Truck does not, in actuality, require that. In fact, the Truck court said if an insurer or an insured gets notice of a claim, that's sufficient. The differentiation between Truck and our case here is precisely that, the notice in December 2000, because in Truck, there was absolutely no notice at any time that the insured was making a claim and that Truck may be called upon to pay any of that, or that there was a potential for contribution. I think that Truck is read too narrowly if it is required that absolutely a co-insurer has to give notice that says absolutely, we are coming after you for contribution. Well, David Rockland's affidavit says that when Hartnett contacted him the month before trial, he did not request that Federal contribute toward the defense of telecenter unity. He also did not inform me that EGLE would be seeking contribution from Federal for defense costs incurred defending either telecenter unity in the underlying action. He also informed me he was reviewing Golden Eagle's coverage position to look for ways to withdraw from the case. Then when I look at Golden Eagle's affidavit, it doesn't contradict it. Well, those were exchanged on cross motions, and David Rockland's declaration was objected to on hearsay basis. There was no other evidence other than his hearsay statement that Roger Hartnett somehow or other said, oh, Golden Eagle's trying to get out of this. Whether that's true or not. I don't think I have a sworn affidavit from the guy that talked to Rockland. I don't think I have a sworn affidavit from Hartnett, do I? I don't believe it's an affidavit. I believe it's his deposition testimony that was submitted in support of Golden Eagle's motion. And in opposition to Federal's motion, there were evidentiary objections to Rockland's declaration, which the court below declined to rule on. Well, if it's a suit between two parties, is he an agent that would be, in other words, the fellow who called? Wouldn't he be an admission and therefore not hearsay? I'm not sure that it's an admission. It surely is hearsay of a form. It might be excused as an admission, but. Oh, no, wait. If it's an admission, it's not hearsay. That may be your honor. Actually, it is. But whether or not that was an admission or not, Golden Eagle did not do anything to take any steps to try and, quote, get out of this. It may have been wishful thinking, but certainly Golden Eagle didn't do anything. It took the case to trial. It paid all the defense costs. It had the attorneys that are being criticized for incurring so many fees on a $150,000 verdict got a remitter down to $80,000. So there are many things that could be said about those attorneys. But the fact remains is that the Truck v. Uniguard case is completely different from the facts that we have here. In fact, in its round peg, our case is a round peg trying to fit into the square hole. And it's primarily because there was notice. And insurance companies all over the country quite frequently get notice on the eve of trial, days or weeks before trial, just like Federal did here. And those insurance companies respond. Federal didn't. And that's because Federal had decided a long time ago that it was not going to pay any defense contribution to the defense of its mutual insurance because it was relying on its other insurance clause. That's the only way Federal gets out of this case when the notice issue raised in Truck and applied in this case is debunked, because there's nothing left. I'm missing something here. I'm looking at Truck Insurance Exchange v. Uniguard, and I don't understand exactly why it's distinguishable. The reason it's distinguishable, Your Honor, is because in that case, Uniguard had absolutely no notice whatsoever that it's insured was being sued, that it would have to pay any defense or indemnity at all, either directly to the claimants or in the form of contribution. It was a complete stranger to the litigation for which Truck then came back and said, give us some money back from a case, oh, by the way, you never knew about. So here you're saying it's distinguishable. It's not distinguishable on no claim for contribution because the affidavit says there was no claim for contribution. You're saying it's distinguishable on notice because even though notice was not as soon as practicable, and even though notice did not give Federal the opportunity to turn down a choice of defense counsel as its policy entitled it to, nevertheless, it got notice on the eve of trial, and that's good enough. I believe it is, Your Honor. It happens every day in this society. Sure didn't in my practice. I used to do insurance defense. You tender at the beginning, not the end. That's true, and that certainly is the better practice, but it happens in today's world. Policies are forgotten. They're discovered later, and sometimes it's not practical to give that notice. In our case, the notice was given. It was given twice. You're relying on that December notice before the January trial. Absolutely, Your Honor. Okay. If there's nothing further? Thank you, counsel. Please, Court. Gilbert Jensen representing Federal Insurance Company, and we admit there was notice given of the But we also strongly point out that what happened in January of 1988 was that both truck insurance and Federal insurance were told that the case was over. Well, so what? I mean, you got notice before trial. What was the notice all about? You were told then that everything was back on the table. Two years later is when we first received it. So what? What in the prior activity of Federal did they do as to controlling the course of the litigation at all? We consented to defense counsel who had a single client, our only insured, Barbara Televeson. While we were a stranger to the litigation, truck stepped in. You weren't a stranger. You originally assumed coverage at the beginning. And closed our file when we were told the case was over. All right, but then you were told that the case was reopened. So what more do you need to know? In that two-year period. Well, what more do you need to know? New counsel was obtained. We have a right under our policy to consent to the incurrence of defense counsel's costs. Well, was there any objection raised, any question raised when you got the notice and said, you know, we don't think that this is the right attorney or, you know, what's going on with the attorney? Don't you have some duty of inquiry if you're going to exercise those rights? And there is where the record is not complete. Well, this is summary judgment, isn't it? For summary judgment purposes, we received a telephone call saying that the case is still going on. So what is the conceivable purpose of making that call to your company, your client's company, other than to put you on notice that you're back on the hook for whatever you were on the hook for at the beginning? To get us to pull out our file. Well. Which is what we did. Yes. And then when the judgment, we were informed of the judgment and we were informed that Golden Eagle would not pay, we then contributed half of what the other. Right, because you were obliged to. And under the Dart case, under equitable contribution, you're responsible for your pro rata share of the defense costs, too, under the other insurance clause. I would disagree with that analysis of Dart, Your Honor. In Dart, after the long quotation by Truck in its brief, is a simple statement that this is a comment along the lines of whether or not this is the law. And they did not reach in Dart a conclusion that other insurance clauses should be interpreted in such a manner as to totally remove Federal's other insurance clauses. No, that's not. They're talking about the excess clause you're relying on. And they say that the modern rule under California law, and this is the California Supreme Court talking, which is superior to the Truck Court of Appeal case, that that is, in fact, the modern rule, that as between the insurers, not as against the insurers, but as between the insurers, there is this obligation of equitable contribution so that nobody has an escape clause. If I may have two comments to that. Sure. First of all, again, in the summary judgment motion that was decided by Judge Otero in this case, there was no reliance on the other insurance clauses. It did not play a role in the determination of whether or not Golden Eagle did equity so that it can get equity. So you're saying it wasn't raised? If I got this right, I thought DART insurance was about reconciling other insurance clauses. Typically, insurance companies write other insurance clauses, and each one of them says this insurance is excess to any other. So the courts just take it over and do it equitably. And I thought Truck insurance exchange was not about other insurance clauses. It's about notice as a condition precedent to liability of the insurer. Have I got that right? You have that right. Now, now, Mr. Jensen, but speaking on that notice point now earlier on, I think you admitted that you had notice. And this seems to be the linchpin of the district court's opinion. Starting at the bottom of page 17 of its order granting summary judgment, which is 863 of the excerpts. This is what the district court says. Although federal had notice of the underlying claim from its inception, Golden Eagle has presented no evidence that federal had actual notice that the January 98 settlement had fallen through. That isn't an accurate statement of the facts, is it? That is an accurate statement. You did. You just said you had notice. We received a telephone call two years later. Well, before the trial started. Isn't that actual notice, though? That is not actual notice that the case has been reopened back in time when federal could have done something with the case. Let's talk about what you could have done something about. It looks to me like what you could do something about is declining to accept a particular defense lawyer so long as your refusal was reasonable. You can't decline consent if it's unreasonably withheld. What was the issue with defense counsel here? There are two issues. One of the issues is that when we were involved in the case and made aware of the case, there were separate counsel for Barbara Televeson, our only insurer, and for a unity shop. When truck took over without notifying us that the claim was ongoing. Truck or Golden Eagle? You say truck took over? When truck took over. When it became involved again when the case reopened in approximately. You're talking about Golden Eagle Insurance, aren't you? I apologize. Yes, Golden Eagle, not truck. When Golden Eagle took over in the defense of the matter, they assigned one set of lawyers to represent both of their insurers. This is the sort of case. How does that impact federal? This is the sort of case where you have an officer of a nonprofit entity who is alleged to have entered into a contract on behalf of the nonprofit entity and who is facing personal liability. Truck recognized that there was a conflict between. Wait, when you misspeak, it really gets confusing. Golden Eagle recognized that there was a conflict between the two individual defendants, their two insurers, and agreed to have separate counsel in June of 1997. However, after federal was out of the picture, Golden Eagle then had new counsel come in representing both defendants. Now, what's the problem with that? I mean, in one sense, it looks good because it's cheaper. In one sense, it does, and from Golden Eagle's standpoint, it would cut down on its overall defense exposure. So what's bad from federal's point of view? What's bad from Tellefson, our insurer's point of view, is she's not being protected in terms of having her rights vis-à-vis her employer. Oh, so you're saying federal protects Tellefson, not Unity, and when you have one lawyer for both Tellefson and Unity, it means that it's hard for Tellefson to blame it on Unity and get off the hook herself. That's correct. And the net result was after judgments already entered and the remittiture occurs, we're then put in the position of having to protect our insurer, Tellefson, whose judgment was against her also, and that's why we then contributed somewhere in excess of $40,000. So you're saying it's really material because the first time when you did get notice and you consented, you had two lawyers, so Tellefson's lawyer could try and blame it all on Unity and get off scot-free. The second time, Tellefson can't blame it on Unity because Unity's lawyer is representing Tellefson. Correct, and moving it beyond the use of the word blame as opposed to blaming Unity, it's a matter of who's responsible for an alleged joint venture between an entity and a third party. Is it the officer of the entity or is it the entity itself? And those issues were never raised. Okay, now all of that could have been discovered when your fellow got the phone call, correct? Correct, Your Honor. Could have objected at that point, could have raised an issue? At that point when hundreds of thousands of our infants... Earlier when I asked you what was the purpose of the phone call, you said it's just to pull out our file. For what purpose? Why would they want, why did Golden Eagle want you to pull out your file? Presumably if things went south at trial, they would like us to participate in paying whatever judgment resulted. Right, and defense costs presumably as well, right? Defense costs were first raised in September of 2001. That's the first time that Golden Eagle ever mentioned the word contribution or ever suggested that they would like Federal to pay a portion of the defense costs that had been incurred by their two insurance, Unity and Televisa. So you don't have, is it your position that Federal doesn't have any obligation to pay defense costs? It only has a reimbursement obligation as to the judgment under its policy? In the circumstances of this case where we did not have notice... Forget the notice. Forget the notice. You're sitting looking, your Federal is sitting there looking at its exposure on this case and it admits that it has exposure on reimbursement of the judgment, but it's saying it has no exposure on reimbursement of defense costs. Yes, Your Honor. And based on what? On excerpts of records, page 161 is the Federal policy and it's the consent to incur costs probation, which is part of section 11 of the policy. Okay, and that applies as between whom? Yes. Exactly the same provision, a consent clause to incur expenses, and that is one of the bases that they found because Truck, in that case, failed to give notice that it was going to seek contribution, then Truck was not entitled to equitable contribution from Unigar,  the exact same provisions that we have in the Federal policy that was not complied with. Unigar, okay, I get that point. But Unigar is clearly a different case on its facts because Unigar was never told about. I disagree with that. There was a communication in Truck concerning the third lawsuit, and then Truck subsequently said, no, we're not tendering that to you for defense. But they were aware of the existence of the lawsuit. And did Dart say that the notice provisions is between the insurance company and the insured don't count, that the Court can equitably change them, or did it just say the other insurance clauses don't count and the Court can equitably change them? The latter. And it's also, I'd like to point out that there is a substantial difference between the other insurance clause in the Federal policy and the policy in the Federal policy. I know that. If we get to the other insurance clauses, but what I'm trying to do is sort out the two things. I had thought that there were two different things, notice provisions where the courts keep them and other insurance clauses where the courts reform them. And I'm wondering if Dart changes anything about that. I don't believe Dart does. And the notice provisions are still considered, as are other provisions, such as provisions requiring seeking consent. Notice means if you're going to make our insurance company pay, you have to tell us about it early enough for us to do whatever it is that we have the right to do. Other insurance means if you have any other insurance, they pay first, we pay second. And since every company usually says the same thing, that's a logical impossibility. Correct. The differences for our policy and why, just on other insurance in general, and why we do not believe Dart or CSE or the other cases really impact our position, none of those cases involve comparing other insurance clauses in a policy that states I am primary versus a policy that has a duty to defend and that has an unlimited duty to defend. There is no limitation on what, in this case, Golden Eagle might have to pay in defense costs. Whereas on the federal side, we are a reimbursement policy. We reimburse the defense costs that we have consented to being incurred. And there is a limit. The limit is our $500,000 limit of liability. And because of those interactions between the two policies that we have in this case, the other insurance cases and the new line of cases, such as the end with Dart, are not really applicable. What's the notice clause in the policy you're relying on, by the way? It's also at page 161, paragraph number 10. 10, okay. And in paragraph number 11, which has to do with defense and settlement, that includes both the consent to incur costs and also another right that we were denied, the right to associate. And I'd like to just briefly read that to you. And this is, again, at excerpts of Record 161. The company, meaning federal insurance, shall have the right and shall be given the opportunity to effectively associate with the insurance in the investigation, defense, and settlement, including but not limited to the negotiation of a settlement, of any claim that appears reasonably likely to be covered in whole or in part by this coverage. But the record in this case, would you not agree, says that when you did have notice at the outset, federal didn't exercise any of those rights. No, I disagree with that. Federal issued a coverage letter. It consented to the incurrence of defense costs using Ms. Seifeld. It then provided to Ms. Seifeld the litigation management guidelines that federal insurance company applies in defense matters. And then it kept up communications right until it was instructed by its defense counsel, by the defense counsel for Seifeld, that the case had settled, that Golden Eagle was paying all of the defense costs, and that Golden Eagle was participating to a small degree in the settlement. So it's your position that when all of that was happening, federal didn't know there was going to be a claim made for defense costs against it? Correct. And our first notice of that was September of 2001. So what did federal assume its liability would be then for the pre-settlement period? On defense costs, nothing. Nothing. Is there no further questions? Thank you. Thank you, counsel. Just very briefly, I'd like to reiterate to the Court a couple of the issues that were raised by counsel. One of the issues was this issue of defense counsel and the right to ---- Well, can you just go right to the heart of what he just said, which is what's troubling all of us, I think, is the notice issue? He's taking the position that they were never federal from day one, was never given notice that they would be looked to for contributing to defense costs. What's your response to that? Certainly, Your Honor. And under the Truck v. Unigard case, a co-insurer who is going to seek contribution from another does not have to use the specific or magic words, we are going to seek contribution from them. The only thing that the Truck case stands for is an insurer must know that it has some liability in the case, either on behalf of its insured or in a contribution setting. Well, how does it know in this case, as apart from the judgment, it has a reimbursement claim related to defense costs? I'm sorry, Your Honor? How does federal know in this case that beyond its reimbursement obligation for the judgment, it has any obligation, any exposure for defense costs? It had that at the initial notice in May of 1998, when it acknowledged that it had a duty to reimburse the insured, that it would have until it decided to invoke its other insurance clause, it was going to pay the insured on an as-incurred basis. As the Ninth Circuit has said, it has to under DNO policy. And that if there was any issue about counsel overlapping or coverage for the organization, which it did not have, does not have, and only for its employee, they would work out an allocation to it. They knew there was going to be some allocation. Counsel, let me ask you about that. I didn't really pick this up clearly from the briefs, but I did from oral argument. In both criminal and civil matters, one kind of defense is no liability. Another kind of defense, criminal defense lawyers call it the soddy defense. Some other dude did it. On the civil side, it's the same thing. Yeah, it happened, it's really bad, and somebody else is responsible for it. And what the Federal says is the first time there were separate lawyers, so they could use that defense. Barbara Tellison, I think her name was, she could blame it all on unity, say I'm just following orders here and it's the firm that I work for, the nonprofit that I work for that's responsible. The second time there was one lawyer for Tellison and her employer, so she can't blame her boss anymore and let the jury hammer her boss and let her go, because she's sharing lawyers with her boss. That seems really material to me, and that's a function of not having timely notice as soon as the settlement fell apart so that they could have a say in who defense counsel was that they're entitled to under the policy. They still got that. They got it on December 1st. It's too late. It's the eve of trial. You set up your whole defense at the beginning of the defense. You don't change it all around on the eve of trial. Well, what's not in the record, Your Honor, is whether or not there was any agreement between Barbara Tellison and unity or whether there was any difference between their liability or not. And I think if some of the documents in the record on appeal show they did have a complete, unity is a hard word to use because that's the name of the insured, but they had a joint interest in getting this film done and getting this woman, DePalma, off their backs. Wait, isn't it true? Sure, that's the no liability defense. None of us owe a nickel. But the blame somebody else defense is not available when you're sharing lawyers. Unless they've waived it. They've agreed that they can have this film. Is there something in the record that you can point me to, any excerpts, where federal says we don't want to try to blame it on unity even though we insure Tellison and we do not insure unity? I cannot point that out, but they never raised it either. In the communications, which are confined to e-mails. Is it true that they just insure Tellison, they don't insure unity? It is. Is there anything below where they argue the two lawyer problem to the district court? No, there's not. But I know. Thank you, Your Honor. Thank you, counsel. Thank you, counsel. Golden Eagle v. Federalists.
judges: Kleinfeld, Tashima, Fisher